## MERRIAM *et al. v.* FAMOUS SHOE & CLOTHING CO.

*(Circuit Court, E. D. Missouri, E. D.* September 10, 1891.)

1. COPYRIGHT—EXPIRATION—WEBSTER'S DICTIONARY.
   The words "Webster's Dictionary," which appeared on the title-page of the edition of 1847, are now public property, by reason of the expiration of the copyright; and any one may reprint that edition, and entitle the reprint "Webster's Dictionary."

2. SAME—FORM AND SIZE OF BOOK.
   No publisher has an exclusive right to the form and size into which a book may be cast.

3. TRADE-MARK—WHAT CONSTITUTES.
   The device of a book on circulars and advertisements, with the words "Webster's Dictionary" printed thereon, is not sufficiently arbitrary to constitute a valid trade-mark.

4. INFRINGEMENT OF COPYRIGHT—DECEIVING PUBLIC.
   Complainants published the enlarged edition of Webster's Dictionary of 1864. Defendants published the "Famous Reprint" of the edition of 1847, but omitted a part of the preface, so that it was uncertain of which edition it was a reprint. Defendants, by their advertisements, represented also that their edition, which sold for $1.45, was a copy of a book that had sold at from $12 to $15 for 20 years, whereas the fact was that the edition of 1847 had been out of print during that time, and the edition of 1864 was the only one that had been on the market. *Held*, that the bill disclosed adequate cause for complaint, in view of the allegations that the public had been deceived, and the complainants had sustained damage.

In Equity. Bill by Homer Merriam and others against the Famous Shoe & Clothing Company to restrain the publication of Webster's Dictionary. Defendant demurs to the bill. Overruled.

The case made by the bill is as follows: Complainants are engaged in publishing and selling a book entitled "An American Dictionary of the English Language," which is commonly called "Webster's Diction ary," or "Webster's Unabridged Dictionary." The book in question is an enlargement, as it seems, of a work originally compiled by Noah Webster, which was termed "Webster's Dictionary," and was first printed in the year 1828. Several editions of the original work have since been published and put upon the market. The first.revision was published in the year 1847; some additions thereto were made in the year 1859; it was more thoroughly revised and enlarged by the com- plainants, or by those under whom they claim, in the year 1864; and in each of the years 1879 and 1884 complainants added a supplement, containing a large number of new words which had then come into use. The dictionary that the complainants are now engaged in publishing and selling is the revised edition of 1864, as enlarged by the supple- ments added thereto in 1879 and 1884. The book is entitled "An American Dictionary of the English Language," and, more specifically, "Webster's Dictionary, Unabridged," which latter words are printed on the outside of the cover on the back of each volume. Since 1870, the complainants, in the transaction of their business as publishers, have made a practice of placing upon their circulars, letter-heads, bill-heads, etc., and also upon packages containing dictionaries, a device represent- ing a book, on which are printed the words "Webster's Unabridged Dic- tionary." The bill further shows that up to the year 1889 the com- plainants had the exclusive right, under the copyright laws of the United States, to publish the edition of 1847 of Webster's Dictionary, but that that edition went out of print more than 25 years ago, the same having been supplanted by the revised edition of 1864. After the expiration of the alleged exclusive right to publish the edition of 1847 of Webster's Dictionary, (that is to say, after January 1, 1889,) the defendant in this case caused a cheap photo-lithographic copy of the edition of 1847 to be prepared and put upon the market. The words "Webster's Dictionary" are stamped on the back of each book so published by the defendant; and in size, shape, and outward appear- ance defendant's books closely resemble the revised edition of 1864, which complainants are engaged in publishing. Defendant describes its book, and advertises it, as "Webster's Dictionary. Famous Reprint Edition. A $12.00 book for $1.45." It also stamps on its circulars and advertisements a representation of a book with the following words printed thereon:

"Webster's Dictionary. Famous Reprint Edition. 1,500 illustrations, and an appendix of 10,000 words. Famous price, $1.45. Regular price for the past 20 years has been $12.00."

In its published advertisements it also makes the following represen- tation, to-wit:

"The original copyright of Webster's Dictionary having expired, the price of which has been from twelve to fifteen dollars for the past twenty years, making it inaccessible to thousands, this book is now placed within easy reach

of all by Famous, who has issued a reprint edition at the trifling expense of $1.45 per volume. '

It furthermore appears that Webster's Dictionary of the edition of 1847 contained a statement on its title-page that the revision was the work of Chauncey A. Goodrich, and a preface giving a succinct history of that edition, of its compilation, date of copyright, etc. All of this matter, it seems, has been omitted in the photo-lithographic edition put upon the market by the defendant; the result being, as it is claimed, that there is nothing in the defendant's reprint of the edition of 1847 to show that it is a reprint of that edition. In view of the premises, complainants claim and allege that many persons have been induced to purchase copies of the cheap reprint put upon the market by the defendant in the belief that they were copies of the same book that the complainants are now publishing; that the reputation of their dictionary has thereby been greatly injured, their sales lessened, etc.; wherefore they ask an injunction restraining the defendant from selling any reprint of the edition of 1847 gotten up in such form as to resemble the edition of 1864, or with dates and devices thereon which are used to distinguish the dictionary now being published by complainants, and for such other relief as the court deems proper to grant.

*Judson & Reyburn* and *Chas. N. Judson,* for complainants.

*Wm. C. & J. C. Jones,* for defendant.

THAYER, J., (*after stating the facts as above.*) I have no doubt that defendant is entitled to use the words "Webster's Dictionary" to describe the work that it is engaged in publishing and selling. Those words were used to describe Webster's Dictionary of the edition of 1847, and, as the copyright on that edition has expired, it has now become public property. Any one may reprint that edition of the work, and entitle the reprint "Webster's Dictionary." The latter words, which appeared on the title-page and on the outer cover of books of the edition of 1847, have become public property, as well as other parts of the work. Defendant's right to call the "Famous Reprint Edition" "Webster's Dictionary" is as clear as the right of complainants to give that title to books of the edition of 1864, which they are now publishing.

I am also of the opinion that no publisher can claim an exclusive right to make a book of a certain form or size. The forms into which objects like books may be cast are likewise public property. The fact, therefore, that defendant's book is similar to complainants' in size and form is in itself no ground for granting the relief sought.

The next matter to be considered is the charge that defendant uses the device of a book, with the words "Webster's Dictionary" printed thereon, on its circulars, bill-heads, etc., in imitation of a like practice pursued by the complainants. In my judgment, no person engaged in publishing and selling a book or books can acquire an exclusive right to use the device of a book on letter-heads and bill-heads, or on wrappers or boxes containing books. The device in question, when used in that connection or relation, is not sufficiently arbitrary to constitute a valid trade-

mark. When so used by a publisher or book-seller, such a device serves to indicate the kind of business in which a party is engaged, or it is descriptive of the contents of particular packages. Other persons engaged in the same business have the right to advertise their calling, or to describe the contents of packages, by the use of the same device. If a publisher or book-seller can acquire an exclusive right to use the device of a book on letter-heads, bill-heads, wrappers, etc., then a watch-maker might acquire the exclusive right to use the picture of a watch, a shoe-maker to use the picture of a shoe, and so on throughout the entire list of occupations in which men are engaged. I conclude, therefore, that no relief can be granted merely because defendant has stamped the device of a book on its circulars and advertisements.

But in some other respects the bill, in my judgment, discloses adequate cause for complaint. In the "Famous Reprint Edition," it seems that the defendant has omitted a portion of the preface contained in Webster's Dictionary of the edition of 1847, so that the reprint fails to disclose on its face that it is in reality a copy of the edition of 1847, and not a copy of the enlarged edition of 1864. Furthermore, the defendant, by its advertisements, represents to the public, in substance, that the "Famous Reprint Edition," now sold for $1.45 per volume, is a copy of a book that has been sold at from $12 to $15 per volume for the past 20 years; whereas the fact is that the edition of 1847 has been out of print during that period, and it is only the enlarged edition of 1864 of Webster's Dictionary, with the supplements of 1879 and 1884 added, that has been on the market, during the period in question, at the price of $12 and $15 per volume. In view of these features of the bill, and the allegation that many people have been induced to buy copies of the "Famous Reprint" in the belief that they were copies of the edition of 1864 of Webster's Dictionary, and in view of the averment that the reputation of complainants' dictionary, which they have been at great trouble and expense to prepare and improve, has been thereby greatly damaged, and the sales thereof largely decreased, I must conclude that, on the showing made, complainants are entitled to some form of equitable relief. If it be true that, by the means described in the bill, the public have been deceived, and the complainants have sustained damage, then the defendant has no right to suppress in the reprinted work all parts of the original publication which would show that defendant's book is merely a reproduction of an old edition of Webster's Dictionary, and at the same time make representations to the public, that are liable to be construed as an assertion on the part of defendant, that its cheap edition of the dictionary is the same book which complainants are publishing and selling. Wrongs of this description, whereby, through an artifice of any sort, the goods of one manufacturer become confused in the public mind with the goods of some other manufacturer, may be redressed by a court of equity. Browne, Trade-Marks, § 43, and citations. It is unnecessary at this time to determine what form of relief should be administered, if the allegations of the bill are proven on final hearing. It may be that some change in the form of defendant's circulars and ad-

vertisements will be all the relief that the circumstances of the case fairly warrant; or it may be that the proof will warrant an order that the defendant place a notice in their book that it is a reprint of the edition of 1847 of Webster's Dictionary, with such additions as they may have made to it. This is a matter, however, to be considered on final hearing, when the exact nature of the injury, and the causes that mislead the public, are ascertained. It is sufficient to say at present that, on the showing made, the complainants are entitled to relief, and the demurrer to the bill is accordingly overruled.